# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT ANDREWS, | No. 4:24-CV-00783 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| WARDEN TALUTTO, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

### NOVEMBER 18, 2024

Plaintiff Robert Andrews filed the instant *pro se* Section 1983[1] action, alleging constitutional violations by Lackawanna County Prison (LCP) officials during his time in pretrial detention at that facility. Andrews' initial complaint was dismissed without prejudice for failure to state a claim upon which relief may be granted. He timely filed an amended complaint, and Defendants moved to dismiss that pleading for failure to state a claim upon which relief may be granted. Defendants also move for summary judgment based on Andrews' failure to exhaust administrative remedies. Because Andrews has failed to rebut Defendants' motion for summary judgment with respect to administrative exhaustion, the Court must grant Defendants' Rule 56 motion.

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

I.  **FACTUAL BACKGROUND**[2]

Andrews entered LCP on September 3, 2023,[3] at which time he was facing numerous charges including aggravated assault with a motor vehicle, fleeing or attempting to elude a police officer, reckless endangerment, and multiple other vehicle-related offenses.[4] At all times relevant to his complaint—which was filed on May 1, 2024—Andrews was a pretrial detainee at LCP.[5] In his initial complaint, Andrews alleged that prison officials at LCP were violating his constitutional rights as a pretrial detainee.[6] His principal claim was that he was being held indefinitely in segregated housing without due process.[7] Liberally construed, Andrews' complaint also appeared to be asserting Fourteenth Amendment equal protection and conditions-of-confinement claims.[8]

---

[2]  Local Rule of Court 56.1 requires that a motion for summary judgment be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. *Id.* Defendants filed their statement of material facts, (Doc. 34), but Andrews failed to respond to that statement. Accordingly, the Court will deem admitted the facts in Defendants' Rule 56.1 statement unless plainly contradicted by the record. *See* LOCAL RULE OF COURT 56.1.

[3]  Doc. 34 ¶ 1.

[4]  *See Commonwealth v. Andrews*, No. CP-35-CR-0002443-2023 (Pa. Ct. Com. Pl. Lackawanna Cnty.).

[5]  *See id.* (indicating that Andrews entered a guilty plea on June 10, 2024, and was sentenced on September 10, 2024); Doc. 1 at 2.

[6]  *See generally* Doc. 1; *see also* Doc. 9 at 3-4.

[7]  *See* Doc. 9 at 3.

[8]  *See id.* at 3-4.

The Court screened Andrews' complaint as required by 28 U.S.C. § 1915A. It first determined that the primary deficiency with his pleading was that, although he was suing three prison officials (Warden Talutto, Warden Pigga, and Grievance Officer Jason Lando), Andrews had failed to plead any personal involvement by these officials in the alleged constitutional misconduct.[9]

The Court then examined the sufficiency of Andrews' various Section 1983 claims. His conditions-of-confinement claim fell short because he had failed to allege that his placement in disciplinary segregation after fighting amounted to unlawful punishment (*i.e.*, that it was punishment "of a pretrial detainee for simply being a pretrial detainee" and without a legitimate penological purpose).[10] The conditions-of-confinement claim was also deficient because Andrews had failed to plead personal involvement by Defendants and thus had failed to plausibly allege that any Defendant had knowledge of the purportedly unlawful conditions and acted with deliberate indifference toward them.[11]

Next, the Court dismissed Andrews' procedural due process claim because—once again—there was no plausible allegation of personal involvement by any Defendant.[12] In other words, even though Andrews had potentially identified a protected liberty interest and a violation of that interest, he had not

---

[9]  *Id.* at 5-6.
[10] *Id.* at 7-8.
[11] *Id.* at 8.
[12] *Id.* at 8-9.

alleged "who was involved in this alleged due process violation and thus responsible for the purported constitutional tort."[13]

Finally, the Court dismissed Andrews' equal protection claim because he had failed to plead that he was discriminated against based on membership in a protected class.[14] His equal protection claim was likewise deficient because he had failed to plead who was responsible for the allegedly unlawful discrimination.[15]

The Court accordingly dismissed Andrews' complaint but granted him leave to amend.[16] Andrews filed an "amended complaint," although it does not follow the general format of a civil complaint.[17] Rather, Andrews' amended pleading reads more like a brief in opposition to the Court's July 8, 2024 opinion.[18]

As best as the Court can discern, Andrews' amended complaint appears to be reasserting his Fourteenth Amendment procedural due process and equal protection claims. While he does not explicitly identify the defendants, the Court assumes that he is suing the same three prison officials named in his original complaint: Talutto, Pigga, and Lando.

---

[13] *Id.* at 9.
[14] *Id.* at 9-10.
[15] *Id.* at 10.
[16] *Id.* at 10-11.
[17] *See generally* Doc. 14.
[18] *See generally id.*

4

Defendants promptly moved to dismiss the amended complaint for failure to comply with Federal Rule of Civil Procedure 8 and for failure to state a claim upon which relief may be granted.[19] Andrews did not respond in any way to this motion.

Approximately a month later, Defendants attempted to supplement their motion to dismiss by raising an additional argument that Andrews had failed to exhaust administrative remedies.[20] On September 17, 2024, the Court notified Andrews that it would consider exhaustion in its role as a factfinder and directed Defendants to file a motion for summary judgment if they desired to assert the affirmative defense of failure to exhaust administrative remedies, as that defense was not apparent from the face of the pleadings.[21] The Court additionally warned Andrews that if Defendants filed a motion for summary judgment and he failed to properly respond to it, the Court would deem that Rule 56 motion unopposed.[22]

Three days later, Defendants filed their motion for summary judgment,[23] brief in support,[24] and Local Rule of Court 56.1 statement of material facts.[25] On October 4, 2024, Andrews filed a two-page document,[26] indicating that he was responding to "the September 17, 2024 Order" and asking the Court to

---

[19] Doc. 20.
[20] *See* Docs. 23, 24.
[21] *See* Doc. 25 (citations omitted).
[22] *See id.* ¶ 3 (citing LOCAL RULE OF COURT 7.6).
[23] Doc. 31.
[24] Doc. 32.
[25] Doc. 34.
[26] Doc. 35.

"reconsider" his *pro se* amended complaint and attachments thereto.[27] Andrews did not file a brief in opposition to Defendants' motion for summary judgment as required by Local Rule of Court 7.6, nor did he file a responsive statement of material facts as required by Local Rule of Court 56.1.

Defendants' motions, therefore, are essentially unopposed, although it is clear that Andrews believes he has plausibly stated an equal protection claim and a procedural due process claim with respect to his "indefinite segregation" at LCP.[28] The Court will review Andrews' filings and the record to determine if he can overcome dismissal of his claims or judgment in Defendants' favor.

## II.   STANDARDS OF REVIEW

### A.   Motion to Dismiss Under Rule 12(b)(6)

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[29] The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[30] In addition to the facts alleged on the face of the complaint, the court may also

---

[27] *See id.* at 1-2.
[28] *See id.*
[29] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[30] *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).

6

consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[31]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[32] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[33] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[34] Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[35] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[36]

Because Andrews proceeds *pro se*, his pleadings are to be liberally construed and his amended complaint, "however inartfully pleaded, must be held

---

[31] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
[32] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[33] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
[34] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[35] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[36] *Iqbal*, 556 U.S. at 681.

to less stringent standards than formal pleadings drafted by lawyers[.]"[37]  This is particularly true when the *pro se* litigant, like Andrews, is incarcerated.[38]

### B.   Motion for Summary Judgment[39]

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[40]  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[41]  Material facts are those "that could alter the outcome" of the litigation, and "disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[42]

At the Rule 56 stage, the Court's function is not to "weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial."[43]  The Court must view the facts and evidence presented "in the light most favorable to the non-moving party" and must "draw all

---

[37] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).
[38] *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).
[39] The Court provides its standard of review for summary judgment with respect to Defendants' claim of failure to exhaust administrative remedies.  The parties have been informed that the Court will consider administrative exhaustion in its role as a factfinder.  *See* Doc. 25.  The parties have been given substantial time to brief the exhaustion issue and to provide relevant evidence and supporting materials.  Defendants' pleading-sufficiency challenges remain subject to the standard of review for a motion to dismiss under Rule 12(b)(6).
[40] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
[41] FED. R. CIV. P. 56(a).
[42] *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).
[43] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

reasonable inferences in that party's favor."[44]  This evidence, however, must be adequate—as a matter of law—to sustain a judgment in favor of the nonmoving party on the claim or claims at issue.[45]  A "scintilla of evidence" supporting the nonmovant's position is insufficient; "there must be evidence on which the jury could reasonably find for the [nonmovant]."[46]  Succinctly stated, summary judgment is "put up or shut up time" for the nonmoving party.[47]

### III. DISCUSSION

Defendants contend that Andrews' amended complaint fails to state a claim upon which relief may be granted.[48]  They additionally argue that Andrews failed to exhaust available administrative remedies.  The Court will consider each argument in turn.

#### A. Equal Protection Claim

As noted above, Andrews asserts that his equal protection rights were violated by LCP officials.  The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its

---

[44] *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014).
[45] *Liberty Lobby*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986).
[46] *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 252) (alteration in original).
[47] *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting *Berkeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).
[48] Defendants also maintain that Andrews' amended complaint violates Federal Rule of Civil Procedure 8.  While this may be true, because Andrews is proceeding *pro se* and because the Court is able to decipher the claims Andrews is raising, dismissal for violation of Rule 8 is not warranted in this case.

jurisdiction the equal protection of the laws." To state a Fourteenth Amendment equal protection claim, a prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class[.]" An equal protection claim can also be asserted under a "class of one" theory, whereby a plaintiff alleges that a state actor intentionally treated him differently than others who are similarly situated "and there is no rational basis for the difference in treatment."

    Andrews, who states that he is African American, alleges that he was treated differently than a white inmate with whom he had a physical altercation insofar as the white inmate was released back to general population while Andrews remained in segregated housing.[49] This equal protection claim again falls short because Andrews has failed to plausibly allege that he is similarly situated to the single comparator white inmate. For example, Andrews does not allege any facts regarding the other inmate's security classification, history of violence or misconducts, or any other relevant matter that would establish that he and the white inmate were similarly situated.

---

[49] Doc. 14 at 2-4; *see also* Doc. 35 at 1 (stating that he is African American).

Additionally, Andrews never alleges in his amended complaint that Defendants intentionally treated him differently because he is African American.[50] While Andrews' amended complaint appears to imply that this is the case, he never actually makes such an allegation, even though it is an essential element of an equal protection claim. For both reasons, Andrews' equal protection claim once again appears to be insufficiently pled. Rather than dismiss this claim under Rule 12(b)(6), however, the Court will extend Andrews the benefit of the doubt and assume that he has plausibly alleged an equal protection claim.

### B. Procedural Due Process Claim

Andrews' principal Section 1983 claim is that his "indefinite" placement in segregated housing at LCP violated his procedural due process rights. His amended complaint plausibly alleges that the named Defendants were made aware of his purportedly unlawful prolonged segregation and lack of required procedural protections, and that they were deliberately indifferent to his plight. Nevertheless, while Andrews may have plausibly alleged a due process violation, he did not exhaust this claim (or his equal protection claim) through the administrative process available at LCP.

---

[50] Although this allegation appears in Andrews' opposition brief, (*see* Doc. 35 at 2), it is well settled that a plaintiff cannot amend his pleadings through a brief in opposition to a motion to dismiss. *Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007) (citing *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988))

### C.     Administrative Exhaustion

The Prison Litigation Reform Act of 1995 (PLRA)[51] requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations.[52] Proper exhaustion is mandatory, even if the inmate is seeking relief—like monetary damages—that cannot be granted by the administrative system.[53] The exhaustion process a prisoner must follow is governed by the contours of the prison grievance system in effect where the inmate is incarcerated.[54]

The following facts are undisputed. When Andrews was initially detained at LCP, he was classified as "Maximum Security" and moved to appropriate housing after medical clearance.[55] On September 17, 2023, Andrews was involved in a physical altercation with another inmate and ordered to serve 28 days in disciplinary custody.[56] As a result of this altercation, Andrews was reclassified as "Special Handling—Violent" by LCP's Classification Committee on September 20, 2023.[57] With this new classification, Andrews was designated for "restrictive housing" at LCP.[58] Following his release from disciplinary custody, he was

---

[51] 42 U.S.C. § 1997e *et seq*.
[52] *See* 42 U.S.C. § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted).
[53] *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).
[54] *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Woodford*, 548 U.S. at 90-91.
[55] Doc. 34 ¶ 3.
[56] *Id.* ¶ 4.
[57] *Id.* ¶ 5.
[58] *Id.* ¶ 6.

assigned to S Block of the Delta Housing Unit, which block is part of LCP's restrictive housing and disciplinary custody unit.[59]

Under LCP policy, outlined in its Inmate Handbook, if a prisoner desires to contest or appeal their classification status, they must follow a specific three-step process.[60] Andrews was provided with an electronic copy of the Inmate Handbook upon arrival to LCP and, except for his 28 days in disciplinary custody, had continual access to this document through the prison's electronic tablet system.[61]

Pursuant to LCP's classification appeal process, an inmate must first appeal their classification to the Classification Committee.[62] It appears that Andrews complied with this first step.[63] This appeal was denied by a member of the Classification Committee.[64] The next step is to appeal an adverse decision to the Deputy Warden.[65] Andrews also appears to have complied with this second step, and his appeals to the Deputy Warden were denied in January 2024 and April 2024.[66]

---

[59] *Id.* ¶¶ 7, 8.
[60] *Id.* ¶¶ 9-11.
[61] *Id.* ¶¶ 10, 11.
[62] *Id.* ¶¶ 12-14.
[63] *See id.*; *see also* Doc. 18-1 at 1 (requesting, through inmate appeal form, to be reclassified to "general population").
[64] *See* Doc. 18-1 at 1; Doc. 34 ¶ 13.
[65] Doc. 34 ¶ 14.
[66] Doc. 34 ¶ 15.

The third and final step in the administrative process is to appeal an adverse decision by the Deputy Warden to the Warden of the prison.[67] Andrews did not complete this step for any of his classification appeals.[68] He therefore failed to exhaust his administrative remedies and procedurally defaulted on the instant procedural due process claim. With no excuse for his procedural default, he is barred from seeking relief in federal court on this claim.[69]

The Court further observes that, as to Andrews' equal protection claim, that claim was never administratively exhausted, either. Indeed, there is no record of any such claim being lodged or appealed through LCP's grievance system or its classification appeal process.[70] Nor has Andrews provided any evidence that he ever raised an equal protection claim with LCP officials. So even if Andrews has plausibly alleged an equal protection violation, he failed to bring it to the attention of prison officials and therefore procedurally defaulted that claim as well.

Prisoners must comply with the PLRA and exhaust available administrative remedies before seeking relief in federal court. The Rule 56 record unequivocally establishes that Andrews did not do so. Accordingly, judgment must be granted in Defendants' favor as to all Section 1983 claims in the amended complaint.

---

[67] *Id.* ¶ 16.
[68] *Id.* ¶ 17.
[69] *See Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004); *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 304-95 (3d Cir. 2020); 42 U.S.C. § 1997e(a).
[70] *See* Doc. 34 ¶ 9.

## IV. CONCLUSION

Based on the foregoing, the Court will grant Defendants' motion for summary judgment. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge